UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RENEE L. M.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil No. 3:19-cv-699-GCS[2] |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

PROCEDURAL HISTORY

Plaintiff applied for DIB in May 2016, alleging a disability onset date of May 21, 2015. After an evidentiary hearing, an Administrative Law Judge ("ALJ") denied the application in August 2018. (Tr. 39-50). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review.

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* FED. R. CIV. PROC. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. § 636(c). (Doc. 10, 19).

(Tr. 1). Plaintiff has exhausted administrative remedies and filed a timely complaint with this Court.

## ISSUES RAISED BY PLAINTIFF

Plaintiff raises the following issues:

1. The ALJ failed to evaluate properly Plaintiff's residual functional capacity in that he:

    (a) relied on an outdated opinion from a state agency consultant,

    (b) determined for himself the significance of radiology reports, and

    (c) ignored evidence of osteoarthritis in Plaintiff's right thumb.

## APPLICABLE LEGAL STANDARDS

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) is the plaintiff presently unemployed?; (2) does the plaintiff have a severe impairment?; (3) does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations?; (4) is the plaintiff unable to perform her former occupation?; and (5) is the plaintiff unable to perform any other work? *See* 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The plaintiff bears the burden of proof at steps 1–4. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *See Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. He determined that Plaintiff had not worked at the level of substantial gainful activity since the alleged onset date and she was insured for DIB through December 31, 2020. The ALJ found that Plaintiff had severe impairments of fibromyalgia, back arthritis, anxiety disorder, and personality disorder. He noted that diagnostic imaging showed osteoarthritis, citing, among other pages, Ex. 9F/2. That is a citation to Tr. 539, an August 2017 x-ray of Plaintiff's right hand. He noted that an examination in August 2016 showed normal fine and gross manipulation and concluded that her degenerative joint disease was non-severe.

The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to do light work with physical and mental limitations. Light work requires occasionally lifting up to 20 pounds and frequent lifting up to 10 pounds, and "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10 (PPS-101), Program Policy Statement, 1983 WL 31251, at *5-6 (1983).

The mental limitations are not at issue here. The ALJ assigned physical limitations of only occasional climbing of stairs and ramps; no climbing of ladders, ropes, or scaffolds; and no concentrated exposure to hazards.

Based on the testimony of a vocational expert, the ALJ found that Plaintiff was not able to do her past relevant work as a canteen operator, playroom attendant, or demonstrator. However, she was not disabled because she was able to do other jobs that

exist in significant numbers in the national economy.

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

**1.  Agency Forms**

Plaintiff was born in 1967 and was about to turn 51 years old on the date of the ALJ's decision. (Tr. 224). She said she stopped working on May 21, 2015 because of her condition. (Tr. 229). She had worked as a concessions worker in a bowling alley, a supervisor in a marketing business, and a supervisor at a school. (Tr. 235).

In July 2016, Plaintiff said she had difficulty using her hands and arms because she had limited range of motion, numbness, pain, stiffness, swelling, tingling, and weakness. (Tr. 244). She said her ability to work was most significantly impacted by problems with walking, sitting, memory, depression, and anxiety. (Tr. 249).

**2.  Evidentiary Hearing**

Plaintiff was represented by an attorney at the hearing in May 2018. (Tr. 59). Plaintiff's last job was as a supervisor for a company that handed out samples at Sam's Club and Walmart stores. Her alleged date of disability is the day she was fired.   Several things happened that ruined her career: a bad marriage, plantar fasciitis, memory issues, nervousness, and anxiety. (Tr. 62-63).

Plaintiff testified that her worst problem was fibromyalgia. She also had "bad issues" with her spine specifically "spurs and spaces and [] sciatica." She had arthritis in

both thumbs and lack of feeling. She had problems gripping small things like forks and pencils. She could only stand or sit for 15 minutes or so and had to keep changing positions. She laid down all day. She could walk from the bedroom to the kitchen and back to the living room. Her pain medication helped only "somewhat." She had side effects of drowsiness, dry mouth and nausea. (Tr. 65-71).

A vocational expert ("VE") also testified. The VE testified that a person with Plaintiff's RFC assessment could not do Plaintiff's past work but could do other jobs at the light exertional level. She had no skills that would transfer to sedentary work. If she were limited to only occasional handling and fingering, there were would be no sedentary jobs that she could do. (Tr. 80-81).

3.  **Relevant Medical Records[3]**

Plaintiff received most of her healthcare from her primary care physician, Dr. Ahmed Radwan. Dr. Radwan's office notes are all in the same format, and the physical exam notes are brief.

Plaintiff saw Dr. Radwan for anxiety and depression in April 2015 (Tr. 386), January 2016 (Tr. 383, 377), February 2016 (Tr. 373, 370), and March 2016 (Tr. 367). There is no notation of physical complaints from those visits.

In late March 2016, Plaintiff was seen for follow up for depression and for an initial evaluation of fibromyalgia. (Tr. 363-366). In April 2016, Dr. Radwan noted that Plaintiff

---

[3]   Plaintiff submitted additional records to the Appeals Council in connection with her request for review. Those records were not before the ALJ and some of them post-dated the ALJ's decision. *See* (Tr. 2). The Court cannot consider those records in reviewing for substantial evidence. *See Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008); *Rice v. Barnhart*, 384 F.3d 363, 366, n. 2 (7th Cir. 2004).

needed disability papers filed. (Tr. 360). The physical exam that date was normal, and Plaintiff was in no acute distress and was "well appearing." (Tr. 362). The physical exam was again normal in May and June 2016. (Tr. 354, 351). Dr. Radwan started her on Oxycodone-Acetaminophen for pain in May 2016. (Tr. 354).

Dr. Vittal Chapa performed a consultative physical exam at the request of the agency in August 2016. Plaintiff's gait was normal. There was no muscle weakness or atrophy. There was no paravertebral muscle spasms, and straight leg testing was negative. Lumbosacral spine flexion was normal. She had full range of motion in all joints. Hand grips were full and equal, and she was able to do fine and gross manipulations with both hands. (Tr. 403-406).

In September 2016, Dr. Radwan noted a normal physical exam. He changed her pain medication from Oxycodone-Acetaminophen to Endocet (Percocet). (Tr. 437-438).

In December 2016, Plaintiff went to the emergency room for back pain. She said she had weaned herself off narcotic pain medication and Xanax. (Tr. 408). Physical exam showed a full range of motion of the back with tenderness laterally and in the midline. There were no x-rays taken. Her mental state was anxious and manic. The impression was low back pain. She was prescribed Motrin and told to follow up with her primary care provider. (Tr. 413-414). She saw Dr. Radwan a few days later and reported that she had overdosed on narcotics "by mistake." (Tr. 428). Physical exam was normal. The assessment was GERD, stable; anxiety/depression, stable; fibromyalgia, stable. He renewed her prescription for Endocet (Percocet) for pain. (Tr. 430-431).

In late December 2016, Plaintiff complained to Dr. Radwan of osteoarthritic pain

in the first carpometacarpal joint (the joint at the base of the thumb) on both hands as well as left SI joint pain. He gave her injections in both thumbs for "inflammation." (Tr. 440-442).

On July 10, 2017, x-rays of the cervical and lumbar spine, right hip, and right hand were done per Dr. Radwan's order. It is not clear how the order came about because there is no record of a visit since December 2016. However, a later note suggests that medications were prescribed by Dr. Radwan in May, June, and July 2017. (Tr. 589). It may be that some records are missing, or maybe Plaintiff requested medication refills over the phone. The right hip films showed mild-to-moderate acetabular spurring superolaterally; mild spurring of the femoral head; minimal joint space narrowing; and degenerative changes of the sacral iliac joints. (Tr. 532-533).

Dr. Radwan saw Plaintiff on August 3, 3017, for a "Chronic Recheck Visit." There was no mention of the x-rays. The physical exam was normal. (Tr. 587-590).

On August 7, 2017, x-rays of the right hand were done per Dr. Radwan's order. They showed "extensive osteoarthritis of the first carpometacarpal joint," but no significant soft tissue swelling, fracture, or dislocation. (Tr. 538-539).

Dr. Radwan saw Plaintiff ten days later and diagnosed a urinary tract infection. There was no mention of the x-rays. (Tr. 579-582).

MRI studies of the cervical and lumbar spines were done on August 29 and 30, 2017. The cervical spine showed multilevel spondylosis without canal stenosis, multilevel neuroforaminal compromise, no large disc herniations, and some loss of lordosis. The lumbar spine showed moderate arthritis, bilateral foraminal stenosis at L5-S1, and non-

compressive small disc protrusions at L3-4 and L4-5. (Tr. 540-542).

On August 31, 2017, Plaintiff saw Dr. Radwan for MRI results and medication refills. The notes mention that Plaintiff was "overall doing well, takes meds regularly, [with] no side effects." There was no discussion of the MRI results in the notes. The physical exam was normal. The assessment was fibromyalgia, stable; low back pain, stable; anemia, stable. She was continued on her current care. (Tr. 575-578).

In September 2017, Dr. Radwan gave Plaintiff Kenalog injections in both SI joints. The reason given for the procedure was joint pain and osteoarthritis. He diagnosed pain in the SI joints and pyriformis syndrome on both sides.[4] (Tr. 569-573). In November 2017, he gave her injections in both thumbs for pain. (Tr. 557-560).

### 4. State Agency Consultant's Opinion

In December 2016, Dr. Madala assessed Plaintiff's RFC based on a review of the record. She concluded that Plaintiff could do light exertion work with the physical limitations ultimately assessed by the ALJ, *i.e.*, occasional climbing of stairs and ramps; no climbing of ladders, ropes, and scaffolds; and no concentrated exposure to hazards. (Tr. 107-109).

ANALYSIS

Plaintiff argues that the ALJ erred in giving "great weight" to Dr. Madala's opinion because it was outdated in that the doctor did not review the x-rays and MRIs that were taken later. She also argues that, without the input of a medical expert, the ALJ's decision

---

[4] "Piriformis syndrome is sciatic nerve pain caused by an injured or overused piriformis muscle. This is a muscle inside your buttocks that helps you move your leg." https://www.drugs.com/cg/piriformis-syndrome.html, visited on June 24, 2020.

is not supported by substantial evidence because the ALJ was not qualified to determine for himself that the cervical and lumbar x-rays were consistent with an ability to do light work.

The determination of RFC is an administrative finding that is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(2). The ALJ "must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions. . . ." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). At the same time, the Seventh Circuit has repeatedly held that an ALJ errs when he determines for himself the significance of imaging studies rather than relying on the opinion of a medical expert. *See McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018); *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018); *Akin v. Berryhill*, 887 F.3d 314, 317 (7th Cir. 2018); *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014), as amended on denial of reh'g (Oct. 24, 2014).

The ALJ gave "great weight" to Dr. Madala's opinion because it was "consistent with and supported by the medical evidence of record." (Tr. 47). However, Dr. Madala did not review any of the MRIs or x-rays. No other medical expert opined on the significance of those studies. The ALJ concluded for himself that those studies were consistent with and supported Dr. Madala's opinion that Plaintiff could do light work.

The ALJ twice stated that the "diagnostic imaging showing facet arthritis in her spine supports" his RFC assessment that Plaintiff was capable of a limited range of light work. (Tr. 45, 48). This is very similar to what the ALJ did in *Akin*, where the Seventh Circuit observed that "without an expert opinion interpreting the MRI results in the record, the ALJ was not qualified to conclude that the MRI results were 'consistent' with

his assessment." *Akin,* 887 F.3d at 317.

Citing a previous decision from this district, Defendant argues that the MRIs and x-rays "were not objective evidence of a dramatic nature which would require further review by a medical professional." (Doc. 25, p. 6). This argument is not persuasive. First, district court decisions "are not authoritative even within the rendering district." *Van Straaten v. Shell Oil*, 678 F.3d 486, 490 (7th Cir. 2012). Secondly, Defendant highlights the negative findings in the studies (no fracture or spondylolisthesis, no abnormal movement, and no large disc herniations) and ignores the positive findings to support the view that the studies did not warrant review by a medical expert. "There is always a danger when lawyers and judges attempt to interpret medical reports . . . ." *Israel v. Colvin*, 840 F.3d 432, 439 (7th Cir. 2016). Defendant and its lawyers are no more qualified than the ALJ to determine whether the abnormal findings in the studies support a conclusion that Plaintiff is capable of light work.

This is not to suggest that remand is required in every case where diagnostic imaging studies are done after the state agency consultant's review. However, the question of whether Plaintiff is capable of light work is critical here. Plaintiff was over the age of 50 at the time of the ALJ's decision. If she were limited to sedentary work with no transferrable skills, she would be deemed disabled at that age under the Medical-Vocational Guidelines ("Grids"). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1. In the circumstances of this case, remand is required.

Plaintiff's contention that the ALJ erred in ignoring the x-ray of her right hand is also correct. That x-ray, which showed "extensive osteoarthritis of the first

carpometacarpal joint," was not mentioned at all by the ALJ. The ALJ assigned no manipulative limitations. The jobs he found Plaintiff capable of doing all require frequent handling. *See Dictionary of Occupational Titles*, §§ 323.687-014, 920.687-018, and 222.687-014. Handling means "seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands." *Herrmann v. Colvin*, 772 F.3d 1110, 1112 (7th Cir. 2014).

Defendant points out that the ALJ is not required to mention every piece of evidence. (Doc. 25, p. 7). That is true, but the ALJ cannot highlight only the evidence that supports his conclusion while ignoring contrary evidence that supports Plaintiff's application. *See Moore v. Colvin*, 743 F.3d 1118, 1124 (7th Cir. 2014). Rather, he must consider all relevant evidence in the case record and evaluate the record fairly. *See Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); 20 C.F.R. § 404.1545 (a)(1) and (3). The ALJ could not have fairly determined that Plaintiff could do jobs that require handling up to two-thirds of the day without considering the evidence of severe osteoarthritis in the joint at the base of the thumb.

The ALJ's errors require remand. "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (internal citation omitted).

This Memorandum and Order should not be construed as an indication that the Court believes that Plaintiff was disabled during the relevant period or that she should be awarded benefits. On the contrary, the Court has not formed any opinions and leaves those issues to be determined by the Commissioner after further proceedings.

## CONCLUSION

The Commissioner's final decision denying Plaintiff's application for disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATE: July 1, 2020.**

Digitally signed by
Magistrate Judge
Gilbert C. Sison
Date: 2020.07.01
09:27:47 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**